**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

|  |  |  |
|---|---|---|
| **LISA G. BURNS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 5:20-cv-00328-MAS** |
| v. | ) | |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION & ORDER

Plaintiff Lisa Burns ("Burns") appeals the Commissioner's denial of her Disability Insurance Benefits ("DIB") application under Title II the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 14, 17]. For the reasons here discussed, the Court finds that the Administrative Law Judge ("ALJ") applied the proper standards and that the ALJ's decision is supported by substantial evidence. The Court thus affirms the Commissioner's decision to deny Burns disability benefits.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Burns protectively filed a DIB application on November 13, 2016, alleging disability beginning October 15, 2016. [R. at 15]. Burns was 51 years of age at the time of application filing. [R. at 33]. She graduated from high school and had prior work experience as a cashier/stocker. [R. at 37]. The Social Security Administration ("SSA") denied Burns's claim initially on March 28, 2017, and upon reconsideration on May 23, 2017. [R. at 15]. Burns filed a written request for a hearing on May 26, 2017. [*Id.*].

1

ALJ Robert B. Bowling ("ALJ Bowling") conducted a hearing on January 31, 2019, in Lexington, Kentucky. [R. at 30]. Kevin McDowell, a non-attorney representative, represented Burns at the hearing, and impartial Vocational Expert Betty L. Hale ("VE Hale") appeared and testified. [R. at 32]. On April 5, 2019, ALJ Bowling issued an opinion finding that Burns was not disabled under the Social Security Act during the relevant period. [R. at 15-24]. ALJ Bowling found that Burns met the applicable insured status requirements, had not engaged in substantial gainful activity since the alleged onset date, and suffered from several severe impairments: (1) spinal disorders; (2) chronic respiratory disorders; (3) sleep-related breathing disorders; (4) cardiac disorders; and (5) restless leg syndrome. [R. at 17]. However, he found that none individually or in combination met or medically equaled a Subpart P, Appendix I listing. [R. at 18]. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

ALJ Bowling ultimately found that Burns had the residual functional capacity ("RFC") to perform light work, with certain outlined adjustments. [R. at 18-23]. *See* 20 C.F.R. § 404.1567(b). Though the ALJ found that Burns could not perform past relevant work, he did find, based on Burns's age, education, work experience, and RFC that Burns nonetheless could perform jobs that existed in significant numbers in the national economy, such as ticket taker, based on the Dictionary of Occupational Titles ("DOT"). [R. at 23-24]. *See* 20 C.F.R. §§ 404.1569, 404.1569a. ALJ Bowling found the VE's testimony consistent with the DOT. [*Id.*]. Accordingly, based on his review of the record, ALJ Bowling concluded that Burns had not been disabled since the alleged onset date. [R. at 25]. *See* 20 C.F.R. § 404.1520(g).

The Appeals Council ultimately denied review in May 2020. [R. at 1]. Burns subsequently initiated this action to challenge ALJ Bowling's decision, which became the final agency decision upon Appeals Council denial. [DE 1 (Complaint)]. Both Burns and the Commissioner have sought

summary judgment.  [DE 14 and 17, respectively].  The motions are ripe for review.  For the

reasons discussed below, the Court grants the Commissioner's motion and denies Burns's motion.

## II.   LEGAL FRAMEWORK[1]

Judicial review of the ALJ's decision is deferential and strictly limited.  The Court's sole

task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's

factual findings are supported by substantial evidence in the record.  *See Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422

(6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Substantial evidence

is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "The substantial-evidence standard allows

considerable latitude to administrative decision makers" and "presupposes that there is a zone of

choice within which the decisionmakers can go either way, without interference by the courts."

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147,

1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole.

*Cutlip*, 25 F.3d at 286.  However, the Court need not comb the entire record in search for facts

---

[1] The Court notes that the legal standard for DIB claims mirrors the standard for Supplemental Security Income ("SSI") claims.  *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table).  "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010).  The Court thus references both SSI and DIB case law interchangeably throughout, mindful of the distinct Title II DIB-specific regulations.

supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ

determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).  ALJ Bowling proceeded through all five sequential steps in this case.

### III.   ANALYSIS

As is typical for DIB cases, the overarching issue is whether ALJ Bowling's disability determination is supported by substantial evidence in the record.  Burns challenges the RFC and disability conclusions in two salient ways; she argues: (1) that the ALJ erred in assigning little weight to the opinion of Dr. Rajan Joshi ("Dr. Joshi"), Burns's treating pulmonologist, and concluding as a result that the RFC should not reflect the recommended limitations; and (2) that the ALJ did not adequately explain why he deemed an assistive device medically unnecessary and elected not to incorporate it into the RFC.  The Court rejects both challenges for the reasons discussed below.  The Court finds the ALJ's conclusions in these regards supported by substantial evidence and, seeing no other challenges, thus finds the RFC and ultimate non-disability determination supported by substantial evidence.  Affirmance of the agency decision is required.

### A.   THE ALJ DID NOT UNREASONABLY WEIGH DR. JOSHI'S OPINIONS.

Burns argues that the ALJ unreasonably assigned little weight to the opinions of Dr. Joshi, Burns's treating pulmonologist, particularly given the greater weight assigned to the opinion of state agency medical consultant Dr. Jack Reed ("Dr. Reed").  [DE 14-1 at Page ID # 1304; R. at 21-22].  Specifically, Burns argues that ALJ Bowling did not adequately explain how Dr. Joshi's observation that Burns was noncompliant with treatment, including a continuous positive airway pressure ("CPAP") machine and smoking cessation, undermined his opinions as to limitations. She further argues that the ALJ did not adequately explain how Dr. Joshi's opinion was undermined by a comment from Burns's neurologist, Dr. James Bean ("Dr. Bean"), that Burns was not a surgical candidate, as Dr. Bean's treatment area (spinal) differed from Dr. Joshi's

5

(pulmonary).  Burns thus contends that ALJ Bowling's determination that her RFC should not reflect Dr. Joshi's urged limitations is not supported by substantial evidence.

The applicable regulations give some deference, where supported, to treating sources.  The parties do not dispute that Dr. Joshi was Plaintiff's treating pulmonologist.  However, a treating physician's opinion is accorded controlling weight only where it is supported by medically acceptable evidence in the record.  20 C.F.R. § 404.1527(c)(2); *see also Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-31 (6th Cir. 1997).  Where a treating physician's opinion is not assigned controlling weight, the ALJ considers the typical factors, including the opinion's supportability, consistency with the record, and degree of explanation, and the source's treatment relationship with the claimant and his specialty.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  The ALJ must provide good reasons for the weight assigned to a treating source opinion.  20 C.F.R. § 404.1527(c).

The ALJ assigned little weight to Dr. Joshi's opinions, *see* Exhibit 9F, that Burns should be "limited to a significantly reduced range of sedentary exertional work activity" and would be required to "miss multiple days of work per month[,]" essentially restricting Burns from all work activity.  [R. at 22].  ALJ Bowling's bases for discounting Dr. Joshi's restrictive opinions were, among other things, the opinions' inconsistency with Dr. Joshi's own objective exam findings and treatment notes, including his notes that Burns was not fully compliant with CPAP use and smoking cessation, as well as Dr. Josh's own recommendation that Burns pursue walking as a form of exercise.  Though the Court finds that Plaintiff's asserted noncompliance with the cited treatment steps does not itself provide a good reason or substantial evidence for the ALJ's weighing of Dr. Joshi's treating source opinion (or add much to the overall quantum of evidence),

the remaining reasons the ALJ cites for discounting Dr. Joshi's opinions both are reasonable and are supported by substantial evidence in the record.

First, Plaintiff fairly argues that she was noncompliant with CPAP machine use because it did not assist her or alleviate her symptoms. [DE 14-1 at Page ID # 1309; R. at 782-88]. Indeed, the ALJ noted that Dr. Joshi had opined that Burns was noncompliant with the CPAP machine because it fit poorly and fell off during the night, contributing to sleeping issues. [R. at 21; Exhibit 18F]. Further, Plaintiff observes that, though she did not fully comply with smoking cessation, she reduced her intake substantially, constituting compliance in meaningful part. [DE 14-1 at Page ID # 1310; R. at 784-90]. The ALJ does not here thoroughly discuss the impact of the perceived noncompliance on his view of Dr. Joshi's opinions, and it is not clear that he considered what are ostensibly good reasons for Burns's less-than-full compliance with the CPAP machine use and smoking cessation. *Cf. McCord v. Comm'r of Soc. Sec.*, No. 3:15-CV-191, 2016 WL 4086983, at *4 (S.D. Ohio Aug. 2, 2016), *report and recommendation adopted sub nom. McCord v. Colvin*, No. 3:15-CV-191, 2016 WL 4764962 (S.D. Ohio Sept. 13, 2016) (citing SSR 96-7p, 1996 WL 374186, at *7,  and noting that, in the credibility context at least, noncompliance with treatment may be relevant *unless* the plaintiff provides good reasons for the noncompliance). At minimum, the Court does not find that these parts of the ALJ's rationale are adequately explained or supported in the record, and the Court does not consider them.

Nonetheless, the Court finds that the other grounds offered by ALJ Bowling for the weight assigned to Dr. Joshi's opinions are reasonable and adequately explained and, together with their citations to support in the record, independently provide good reasons and substantial evidence for the weight assignment and resulting RFC. Most notably, ALJ Bowling reasonably concluded that "the medical evidence [did] not fully support the claimant's allegations of limitations due to

multiple respiratory issues, such as COPD and obstructive sleep apnea." [R. at 20].  Though Burns

exhibited shortness of breath and decreased oxygen saturation levels (to 75%), ostensibly due to

Gold stage 2 COPD and moderate airway obstruction issues, many examinations revealed normal

or partially normal pulmonary test results and effort, frequently showing no rales, rhonchi, or

wheezing, and demonstrating normal auscultation with normal effort.  [R. at 20; R. at 783, 822

(diminished breath sounds but clear to auscultation without rales, wheezing, or rhonchi), 1023

(essentially same)].  The ALJ reasonably concluded that these results and findings do not entirely

support limitations as restrictive as those urged by Dr. Joshi, and ALJ Bowling reasonably found

that the mixed evidence of pulmonary restrictions described (despite the severe impairments

themselves, such as COPD, as the ALJ recognized) supported the instant RFC, which specifically

limits both Plaintiff's exertional activities and her exposure to many pulmonary irritants.

Further, ALJ Bowling reasonably found that Dr. Joshi's opinion as to sedentary work

restrictions was not consistent either with his own recommendation that Burns engage in walking

as regular exercise or with Dr. Bean's medical and surgical opinions.  It was reasonable for ALJ

Bowling to conclude that Dr. Joshi's own recommendation that Burns walk for regular exercise at

least somewhat undermined his opinion that Burns was severely limited in her ability to walk for

work purposes.  [R. at 21; R. at 1024].  It was likewise reasonable for the ALJ to observe that Dr.

Joshi's restrictive walking limitations (only four hours total in an eight-hour workday) were not

entirely consistent with Dr. Bean's largely normal neurological examination findings and his view

that Burns was not a surgical candidate for spinal issues.  [R. at 1209-11].  The Court further rejects

Burns's contention that Dr. Bean's surgical opinion, as a neurologist, is irrelevant to the ALJ's

assessment of Dr. Joshi's opinion in this context, as it is apparent even from a lay perspective that

evaluation of Dr. Joshi's recommended sedentary restrictions may reasonably entail both a

pulmonary and neurological component.  In other words, the functioning of Burns's lungs and her musculoskeletal system each may impact her ability to walk for durations, and to the extent any specialist opines on the resulting aggregate functional limitation, evidence from various specialties (pulmonologists, neurologists, etc.) may have value in the analysis.

Based on the evidence noted above as discussed in reasonable detail, with adequate support, in ALJ Bowling's decision, the Court is able to discern an accurate, logical bridge between ALJ Bowling's assessment of the evidence and the weight he assigned to Dr. Joshi's opinions. *See, e.g.*, *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).  Even ignoring the inadequately explained reasons here noted (namely, the treatment noncompliance), ALJ's remaining bases for his weighing of Dr. Joshi's opinions are sufficiently clear and supported to provide substantial evidence for the outcome, when fairly construed in light of the ALJ's decision as a whole.  *See Hughes v. Comm'r of Soc. Sec.*, No. 18-11168, 2019 WL 2950080, at \*2 (E.D. Mich. July 9, 2019) (emphasizing that "it is proper for the Court to read the ALJ's assessment of the treating physician's opinion together with the ALJ's decision as a whole" (quotation marks omitted)); *id.* (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010), and observing that the ALJ may indirectly support its weighing of treating source evidence).  ALJ Bowling thus provided acceptable reasons for his handling of Dr. Joshi's treating source opinions and their impact on the ultimate RFC.  For these reasons, the ALJ's interpretation and weighing of the Joshi proof was reasonable, and the ALJ applied the proper regulatory standards.

Additionally, the ALJ reasonably weighed Dr. Reed's opinions in relation to Dr. Joshi's opinions and adequately explained his grounds for such weight assignments.  First, the ALJ observed that both Dr. Reed's opinions and the objective medical evidence, including Dr. Bean's findings as already discussed and other medical imaging results showing no more than moderate

9

degeneration, were consistent with and supported a finding that Burns is limited to a reduced range of light exertional work.  [R. at 21-22; Exhibit 3A].  ALJ reasonably noted the objective lack of advanced pulmonary distress or supplemental oxygen requirements per the record.  And, though Plaintiff faults the Reed evidence and the ALJ's consideration of it as stale, the ALJ and Commissioner each note that later evidence either shows no material change or even improvement in some relevant respects.  [R. at 22 (discussing stenting procedure and improvement in cardiac symptoms; DE 17 at Page ID # 1329 n. 8 (likewise discussing success of stenting procedure)].

ALJ Bowling's analysis meets the minimum explanatory and evidentiary standards and, even if this Court may have treated the proof differently in the first instance, it may not reweigh it here given the support discussed.  To the extent ALJ Bowling's determinations and the weight he ultimately assigned to Dr. Joshi's opinions in relation to others (such as Dr. Reed's) led him to craft an RFC without the urged, more restrictive limitations, the Court concludes that this finding and the corresponding RFC are supported by substantial evidence—a relatively low bar.  The Court thus may not disturb the ALJ's findings in this regard on review.

**B.**     **THE ALJ ADEQUATELY EXPLAINED WHY THE RFC LACKED AN ASSISTIVE DEVICE LIMITATION.**

Plaintiff challenges the RFC's failure to include her need for a walker, in particular arguing that the ALJ failed to sufficiently explain his reasons for declining to include the restriction in his RCF determination.  However, ALJ Bowling directly addressed Plaintiff's potential need for a walker and his reasons for declining to include such a limitation in the RFC.  [R. at 19-20].  The Court finds the explanation adequately reasoned and supported, per the applicable standards.

The record demonstrates that Dr. John Belanger ("Dr. Belanger") prescribed Burns a rollator walker in May 2018, largely at her request.  [*See* Exhibit 15F; R. at 1102, 1104, 41].  The ALJ found that the medical evidence did not support that Burns required a walker as a working

10

restriction. He noted that Dr. Belanger's other findings reflected only mild/moderate spinal limitations, with only mild spondylosis and no sensory or muscle loss. [R. at 20, 1176-77, 1183, 1209-10]. The ALJ further cited Dr. Bean's neurological findings and opinion that Plaintiff was not a surgery candidate as grounds for finding the walker, even if helpful, not medically necessary under the relevant disability standards. The Court finds that this interpretation of the evidence and ALJ Bowling's corresponding rationale are reasonable.[2]

Even if some evidence in the record does support need for a walker (or, at least, indicate that a walker may help Plaintiff's symptoms), the ALJ reasonably cited substantial evidence indicating that it is not strictly required. ALJ Bowling's conclusion that the walker was not medically necessary for RFC inclusion purposes is thus supported by substantial evidence in the record. *See, e.g.*, *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-CV-876, 2019 WL 1146356, at *6 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted*, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) (discussing SSR 96-9P, 1996 WL 374185, and related authority and finding that the ALJ reasonably concluded that the claimant had not put forth sufficient "medical documentation establishing the need" for an assistive device, despite the claimant's representation as to need for such a device); *accord Ross v. Comm'r of Soc. Sec.*, No. 2:17-cv-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *3-4 (E.D. Mich. Sept. 25, 2017).

---

[2] The Court agrees with the ALJ's and Commissioner's characterizations of the disc bulging and neuroforaminal narrowing imaging evidence, at least to the extent it finds the ALJ's interpretation of the proof reasonable overall. [*See* R. at 20; DE 17 at Page ID # 1330 n.4]. Though the imaging does in part show high-grade neuroforaminal narrowing in two places, out of several categories of lumbar MRI findings, the bulk of remaining results are only mild or moderate. [R. at 1177]. The ALJ's collective impression of the mixed findings is thus reasonably supported by the evidence in context.

## IV.    CONCLUSION

For all of the reasons discussed,  **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 17] is **GRANTED** and Burns's competing motion [DE 14] is **DENIED**. A corresponding Judgment shall follow.

This the 4th day of February, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge